ESSIE HARTFORD, administratrix, *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Worcester.   September 29, 1903. — November 25, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Negligence.*

In an action against a railroad company for causing the death of the plaintiff's intestate, it appeared, that the plaintiff was in the employ of the proprietor of a factory and was engaged in unloading merchandise from a car, standing on a switch track near the factory, into a chute in the factory connected with the car by a steel " brow " four and one half feet long, three feet wide and one quarter of an inch thick, that the intestate was told by the conductor of the switching crew to " look out " because cars were to be moved, that upon such information it was the duty of the intestate to take down the " brow ", that shortly afterwards by order of the conductor a car was moved against the one which the intestate was unloading, and the intestate was found caught between the " brow " and the building, suffering injuries from which he died. *Held,* that, on the evidence in the case, the questions whether sufficient time to remove the " brow " was given

to the intestate, whether he was performing that duty with due diligence and skill, and whether the conductor was negligent in starting the car without taking more pains to ascertain the situation of the intestate, were for the jury, and that, in view of the damage to life and limb by a premature moving of the car, the question, whether the negligence of the conductor was gross, was for the jury.

TORT, under R. L. c. 111, § 267, against a railroad company, for the death of the plaintiff's intestate alleged to have been caused by the negligence of the defendant or the gross negligence of its agents or servants.    Writ dated April 25, 1902.

At the trial in the Superior Court before *Gaskill*, J., there was evidence of the following facts, besides those stated in the opinion :

Robert H. Hartford, the plaintiff's intestate, on the afternoon of May 6, 1901, was in the employ of the Natural Food Company of Worcester, and was engaged in unloading shooks for boxes, from a car standing on a switch track.    This unloading was done by throwing the shooks into a chute which ran from near the opening of a window opposite the car door into the basement. The chute was connected with the car by a flat piece of iron, called a brow, about four and one half feet long, three feet wide, and one quarter of an inch thick.    One end of the brow lay in the chute, the other, slightly curved, rested on the sill of the car door.    It became necessary to remove some cars farther north on the switch track, and to do so it was necessary to move out the car which the plaintiff's intestate was unloading.    There was, on the switch track south of the car which the intestate was unloading, a box car filled with shredded wheat biscuit, which was about twelve inches wider than the car that the plaintiff's intestate was in.    Word was sent to the defendant's yard master, and an engine and crew immediately were sent to do the work.    The engine and crew came up from the yard, fastened to the larger car, then backed and coupled to the one which the intestate was unloading.    The cars were moved north about a car's length ; there was a cry that some one was hurt, and the cars were stopped.    Upon an examination it was found that the plaintiff's intestate was between the cars and the building clinging to the sash of the window, and that the brow had been moved around by the wider car, pinning the deceased to the wall, and causing the injuries from which he died.

As the cars stood on the siding the car the intestate was unloading was distant from the wall of the building one foot, four and one half inches, and the wider car eleven and one quarter inches.

The conductor and trainmen were familiar with the locus and with the manner in which the employer of the intestate conducted his work. There was a rule of the railroad company for its employees, and likewise a direction from the superintendent of the employer of the deceased, not to move any cars when there was a brow attached to them, or when any person was in the cars.

At the close of the evidence, the defendant requested the judge to rule, that, upon all the evidence, the plaintiff was not entitled to recover, that there was no sufficient evidence to warrant the jury in finding that the plaintiff's intestate was in the exercise of due care at the time of the accident, and that there was no sufficient evidence to warrant a verdict for the plaintiff on the ground that the death of the plaintiff's intestate occurred by reason of the gross negligence of the defendant's agents or servants, engaged in its business.

The judge refused these requests, and submitted the case to the jury upon instructions not objected to. The jury returned a verdict for the plaintiff in the sum of $5,000; and the defendant alleged exceptions.

*A. P. Rugg,* for the defendant.

*E. H. Vaughan, J. A. Thayer & C. B. Perry,* for the plaintiff.

HAMMOND, J. The evidence was ample to show that while the plaintiff's intestate was engaged in unloading the car he was told by Carruth, the conductor in charge of the crew who were to remove the cars from the side track, to " look out," because the cars were to be moved; that upon such information it was the duty of the intestate to take down the steel " brow " which connected the car with the chute in the building; that shortly afterwards the cars were moved in obedience to orders from Carruth, and after they had been moved a few feet the intestate was found caught between the " brow " and the building and badly injured. So far the case is plain.

As to many of the other parts of the case the evidence is conflicting, and the defendant stoutly contends that there is nothing

to show due care of the intestate or gross negligence of the defendant's servants. While it is true that upon the evidence a strong argument can be made in favor of the defendant, still we are of opinion that in view of the weight, size and shape of the "brow," the narrow space between the car and the building, the duty of the intestate upon being warned and the other circumstances of the case, the questions whether sufficient time to remove the "brow" was given to the intestate, whether he proceeded with due diligence and skill to the performance of that duty and was injured while thus acting, and whether Carruth was negligent in starting the car without taking more pains to ascertain the situation of the intestate, were for the jury. And in view of the danger to life and limb by a premature moving of the car under the circumstances, the question whether the negligence of Carruth was gross was also for the jury. For cases somewhat analogous in principle to this case as to some of the questions raised, see *Thyng* v. *Fitchburg Railroad*, 156 Mass. 13 ; *Maguire* v. *Fitchburg Railroad*, 146 Mass. 379.

*Exceptions overruled.*